UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| Plaintiff, § | |
| § | |
| vs. § | CR. NO. C-06-87(02) |
| § | |
| DANIEL MARTINES-MENDEZ § | |
| a/k/a PABLO GONZALEZ-LOPEZ, § | |
| Defendant. § | |

### ORDER ON MOTIONS TO RECONSIDER BOND FOR MATERIAL WITNESSES CANO, VASQUEZ-MATA, OCHOA-MORENO, SANCHEZ-ESCOBAR, AND MARTINEZ-PERALES

#### Background

This case arose out of an accident which occurred on January 26, 2006, at the intersection of U.S. Highway 281 and Jim Wells County Road 405 (D.E. 1). Defendant Santos Guajardo, who later stated his true name was Dario Martinez-Caporeli, was identified as the driver of a gray Ford 150 truck which collided with a tractor-trailer driven by material witness Julio Cesar Douman-Lopez, a citizen of Guatemala (*Id.*). Six occupants of the gray Ford 150 truck died in the accident, and five survivors, all illegal aliens traveling in the gray Ford 150 truck, were designated as material witnesses. Another illegal alien, Armando Cano, was traveling in a Border Patrol vehicle that arrived at the scene of the accident within seconds after it occurred. He was also designated as a material witness (D.E. 23).

An unsecured bond with conditions was set for material witness Julio Cesar Douman-Lopez, a citizen of Guatemala (2/03/06 Minute Entry, D.E. 28). Bonds for material witnesses Daniel Martines-Mendes, a citizen of Mexico, Victor Manuel Martinez-Perales, a citizen of Mexico, Elias Ochoa-Moreno, a citizen of Mexico, Armando Cano, a citizen of Mexico, Tomas Sanchez-Escobar,

a citizen of Honduras, and Edward Vasquez-Mata, a citizen of Mexico, were set at $5,000 cash or surety at the request of the government (D.E. 13, 18, 23, 44, 50).

The driver of the gray Ford 150 truck, Dario Martinez-Caporeli a/k/a Santos Guajardo, and one of the material witnesses, Daniel Martinez-Mendez a/k/a Pablo Gonzalez-Lopez, were indicted by a Grand Jury and charged with four counts of transporting unlawful aliens in violation of 8 U.S.C. § 1324(a)(1). Defendant Dario Martinez-Caporeli committed suicide at the Nueces County Jail, and will be dismissed from the case after a death certificate is received (2/9/06 Minute Entry). Daniel Martines-Mendes a/k/a Pablo Gonzalez-Lopez, also an illegal alien from Mexico, was arraigned on February 14, 2006 (2/14/06 Minute Entry). He waived his right to a detention hearing and is scheduled for Final Pretrial Conference March 27, 2006 (2/14/06 Minute Entry, D.E. 47).

On February 23, 2006, a status conference was held as to the material witnesses. The bond conditions for material witness Julio Cesar Douman-Lopez were amended by agreement of the parties. The government announced that because the case involved several deaths, review by the Department of Justice (DOJ) for the possibility of charging as a death penalty offense was mandatory. Review was estimated to take several months. Both the government's counsel and the defendant's attorney were opposed to the taking of material witness depositions at least until a decision was made on whether the death penalty would be sought. Government's counsel also believed that because the investigation was ongoing, counsel for any future defendants will have been denied the right to be present for and participate in the depositions.

Counsel for material witnesses Victor Manuel Martinez-Perales, Elias Ochoa-Moreno, Armando Cano, Edward Vasquez-Mata, Tomas Sanchez-Escobar orally moved to amend the

conditions of bond. Investigative reports from Pretrial Services were ordered, and review hearings were scheduled for Friday, March 3, 2006 (2/23/06 Minute Entry).

At the hearing on March 3, 2006, government's counsel stated that the government was opposed to the release on bond of any material witnesses because the case is still potentially a death penalty case. Government's counsel also announced that he believed death penalty review by DOJ would be expedited, and a decision as to whether to seek the death penalty would probably be made sometime within the next one to two months. Defendant's counsel reported he was not opposed to the release of the material witnesses on bond.

The Pretrial Services reports were made available to all counsel, and amended bonds were recommended for witnesses Victor Manuel Martinez-Perales, Elias Ochoa-Moreno, Edgar Vasquez-Mata, and Armando Cano. A bond was not recommended for Tomas Sanchez-Escobar because of the failure of any family members to come forward to take responsibility for Mr. Sanchez-Escobar. Mr. Sanchez-Escobar's hearing was continued until Thursday, March 9, 2006, at 11:30 a.m. to enable family members to contact Pretrial Services in the hopes that an amended bond would be recommended. Though a bond was recommended for witness Martinez-Perales, the report also indicated that the government was considering filing criminal charges of illegal entry after deportation (8 U.S.C. § 1326). Mr. Martinez-Perales' hearing was continued until Thursday, March 9, 2006, at 11:30 a.m. for the government to make a decision about whether to file criminal charges against him.

At the hearing on March 3, Immigration and Customs Enforcement (ICE) Special Agent Victor Rowley explained the process for seeking permission for temporary release by immigration authorities. Upon release from the custody of the United States Marshal in the criminal case, the

witnesses are transferred to the custody of immigration authorities to seek permission for temporary release. Any witness who has been previously deported or removed, or any witness with a criminal history will not be considered for a temporary release into the United States. A memo with names, biographical data, immigration histories, and criminal histories is sent by the local ICE agents to the Special Agent in Charge (SAC) of the Houston ICE office. If approved for temporary release, the individual witnesses will be transported to Houston to be photographed and issued temporary work permits. Agent Rowley estimated that the time necessary to review the individual petitions to be approximately one week. If the Houston SAC does not agree to permit release of the material witnesses on bond, they will remain in ICE custody, probably at a camp, until this case is resolved and they are no longer needed. According to Agent Rowley, the witnesses will not be deported while the case is pending.

## **Applicable Law**

The United States government is substantially justified in detaining undocumented aliens as material witnesses for criminal prosecution of those persons charged with transporting them across the border. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 418-19 (5th Cir. 1992). Release of material witnesses is covered by 18 U.S.C. § 3144:

> If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can be secured by deposition, and if further detention if not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

The government and the defendant oppose the taking of depositions until a decision is made about whether the government will seek the death penalty. Whether or not the death penalty is sought will certainly affect the scope of the deposition testimony, especially as it may relate to sentencing issues. The government also opposes the taking of depositions and subsequent release of material witnesses because an investigation is ongoing, and if others are indicted as a result of the investigation, they will have been deprived of the opportunity to confront and cross-examine the material witnesses. The government's and the defendant's opposition to the scheduling of depositions is sound, and forcing depositions at this stage could harm the government's and the defendant's right to a fair trial, and certainly might affect the right of any future defendant to receive a fair trial.

Because deposing the material witnesses and their subsequent deportation at this time might result in a failure of justice, the issue of continued detention of the material witnesses must be considered. Release of material witnesses is governed by 18 U.S.C. § 3142. 18 U.S.C. § 1344. A person *shall* be released on personal recognizance, or upon execution of an unsecured appearance bond unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community. 18 U.S.C. § 3142(b). If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, the judicial officer shall order the pretrial release of such person subject to the least restrictive further condition or combination of conditions which will reasonably assure the appearance of the defendant and the safety of any other person and the community. 18 U.S.C. § 3142(c). The factors which must be considered in making

this determination include the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, criminal history, and record concerning appearance at court proceedings, whether the person was on conditional release at the time detained, and the nature and seriousness of the danger to any person or the community that would be posed by the persons's release.  18 U.S.C. § 3142(g).

### Material Witnesses Ochoa-Moreno, Vasquez-Mata, and Cano

For each of the material witnesses Ochoa-Moreno, Vasquez-Mata, and Cano, Pretrial Services prepared a report, examining the factors under § 3142.  All three witnesses have no criminal histories and no immigration histories.  Two have responsible legal family members in the United States willing to accept the witnesses into their homes and to guarantee their appearance in court, and placement in a halfway house in Brownsville is recommended for a third.  The findings and conclusions contained in the Pretrial Services Report are adopted as the Court's own.  The government's and the defendant's concerns about risk of flight can be addressed with conditions of bond.  Bond is set for each of the material witnesses as follows:

**1.     Armando Cano:** Bond is set at $10,000 with a required $500 cash deposit.  The bond shall be signed by a third party custodian approved by Pretrial Services, and Mr. Cano shall reside with his third party custodian.  The defendant shall be supervised by the Pretrial Services Office in Fort Worth, Texas.   His travel is restricted to Tarrant County, and he will be permitted to come to Corpus Christi to meet with his lawyer and to attend court proceedings.  Defendant shall refrain from the excessive use of alcohol and not use or possess illegal drugs.  The defendant shall not possess firearms, explosives, or other dangerous weapons, shall maintain a verifiable land-line telephone

while on bond. Finally the defendant shall be placed on a GPS monitor until such time as the Government and Pretrial Services agree that the monitor is no longer a necessary condition of bond.

**2.** **Elias Ochoa-Moreno:** Bond is set at $10,000 with a required $500 cash deposit. The bond shall be signed by Hober Reyes-Ramos as a co-surety and a third party custodian. Mr. Ochoa-Moreno is to reside with Mr. Reyes-Ramos at 2106 6th Street in Galena Park, Texas, and be supervised by the Pretrial Services Office in Harris County, Texas. His travel is restricted to Harris County, and he will be permitted to come to Corpus Christi to meet with his lawyer and to attend court proceedings. Defendant shall refrain from the excessive use of alcohol and not use or possess illegal drugs. The defendant shall not possess firearms, explosives, or other dangerous weapons, shall maintain a verifiable land-line telephone while on bond. Finally the defendant shall be placed on a GPS monitor until such time as the Government and Pretrial Services agree that the monitor is no longer a necessary condition of bond.

**3.** **Edgar Vasquez-Mata:** Bond is set at $10,000 unsecured. The witness must reside at the Reality House (halfway) in Brownsville, Texas, and abide by all rules and regulations of the facility. He will be supervised at the direction of the U.S. Pretrial Services Office in Brownsville, Texas. Travel will be restricted to Brownsville, Texas, with return trips to Corpus Christi to be coordinated by Reality House personnel and pretrial services officers in Corpus Christi and Brownsville.

ORDERED this 8th day of March, 2006.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE